IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| SAID CHAHMOUNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-42 (RDA/TCB) |
| | ) | |
| JAMES C. CLARK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Motions to Dismiss separately filed by Defendant Stephen Mutschall (Dkt. 8); Defendant City of Alexandria (Dkt. 15); and Defendant the Honorable James C. Clark (Dkt. 20) ("Motions"). Each motion seeks to dismiss Plaintiff Said Chahmoune's Amended Complaint. Plaintiff, who is proceeding *pro se*, has been afforded the opportunity to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Local Civil Rule 7(J). Considering the Motions together with Defendants' memoranda in support (Dkt. Nos. 9; 16; 21), the Motions are hereby granted and the Amended Complaint is dismissed for the reasons that follow.

I. BACKGROUND[1]

Plaintiff, proceeding *pro se*, has brought claims arising from a City of Alexandria Circuit Court case involving the appointment of a guardian and conservator for his now late wife,

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Geraldine Dwyer ("Dwyer"). Plaintiff challenges actions Defendants took in connection with the appointment of his wife's guardian and the probate of her estate, which the Court recounts below.

Plaintiff was married to Dwyer for about twenty-two years. Dkt. 4 at 2. Before marrying, the couple entered into a Pre-marital Agreement in which they agreed that any property they separately owned would remain their separate property during their marriage, and that the other party could not acquire an ownership interest in that property. *Id.* at 5. The home they resided in together in Alexandria, Virginia was separate property owned by Dwyer prior to the marriage. She also had a will naming her son Donald ("Donnie") Kimball, and her brother Dennis Shore, as co-executors. *Id.* at 4. The will also left her house to her three children from a prior marriage. *Id.*

Dwyer began receiving senior and social services through various City of Alexandria departments in 2018. Dkt. 4 at 2. Those services eventually raised concerns among city employees regarding her mental and physical well-being. After city employees reported their assessments of Dwyer's condition, the City petitioned for appointment of a guardian. *Id.* The City later filed an emergency motion asking the Circuit Court for the City of Alexandria to order that Dwyer remain in a nursing home pending the trial of the guardianship petition. *Id.* Judge Kemler denied that motion without prejudice. *Id.*

On December 4, 2019, the City asked the Circuit Court to immediately appoint Dwyer a guardian on an emergency and temporary basis until a full trial on the guardianship petition could be held. *Id.* Judge Clark of the Circuit Court of Alexandria heard argument on that motion and entered an order appointing Defendant Stephen Mutschall, Esq. ("Mutschall") as Dwyer's temporary Guardian. *Id.* at 2. Following the January 7, 2020 trial regarding the City's petition, Judge Clark declared Dwyer to be mentally incapacitated and granted the City's request for the

2

appointment of a guardian, appointing Mutschall as Dwyer's permanent guardian. *Id.* at 2-3. Plaintiff alleges that Dwyer was represented by counsel at both hearings. *Id.*

During the pendency of the litigation in the Circuit Court, Dwyer was also moved to a nursing home. *Id.* at 2-3. Because of this move, Judge Clark entered an order permitting the sale of her house, which Plaintiff opposed. Plaintiff states that he learned on May 30, 2020 through a phone call from Mutschall that his wife had passed away at the nursing home that day. *Id.* at 4. Plaintiff states that "a claim of COVID is not to be believed" and that his wife "died under suspicious circumstances." *Id.* After Dwyer's death, Mutschall filed a probate action on Dwyer's behalf in Alexandria Circuit Court. *Id.* at 4. Neither of her estate's named co-executors wished to serve, however, and they signed waivers to decline serving. *Id.*; *see also* Dkt. 4-1 at 4, 7. Mutschall was therefore certified by the Circuit Court as administrator of the estate. Plaintiff alleges this appointment was fraudulent and that he was deprived of an opportunity to argue his motion to disqualify Mutschall. *Id.* at 5.

On December 22, 2020, Dwyer's son, Donnie Kimball passed away. *Id.* Plaintiff alleges that after Kimball's death, Mutschall cashed in Kimball's $50,000 life insurance policy even though the policy named a different beneficiary. Mutschall, acting on behalf of Dwyer's estate, brought an eviction suit against Plaintiff, arguing that he was not entitled to remain in the home. The case was tried in February of 2021, and after the Alexandria General District ruled against Plaintiff and in favor of Dwyer's estate, a writ of possession was served on Plaintiff on April 2, 2021. *Id.* at 4-5.

In his Amended Complaint, Plaintiff objects to the appointment of Mutschall as Dwyer's guardian and conservator, and further as administrator of Dwyer's estate after her death. *See generally* Dkt. 4. Plaintiff has sued Judge James C. Clark, who had deemed Dwyer an

3

incapacitated person under Virginia law; the City of Alexandria; and Mutschall.  Plaintiff alleges that Defendants engaged in a conspiracy to deprive Dwyer and her estate of its assets, theft, and deprivation of Dwyer's property located on Lynhaven Drive in Alexandria, Virginia.  Plaintiff seeks damages and injunctive relief under 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth, and Fourteenth Amendments; alleges claims of conversion and false arrest; and alleges that Defendants engaged in common law civil conspiracy.  *Id.* at 6.  Furthermore, Plaintiff accuses Mutschall of self-dealing and alleges that Mutschall sought to, and did, "steal her assets."  *Id.*  He also alleges that "Judge Clark is a crook" who "is in on the conspiracy to steal Geraldine [Dwyer's] assets."  *Id.* at 8.  He also seeks recovery of the amounts Mutschall allegedly converted ($50,000 from Dwyer, and $20,000 directly from him), injunctive relief, appointment of independent counsel to act as administrator and personal representative of Dwyer's estate, return of all funds to Dwyer's estate, and punitive damages.  *Id.*

Defendants James Clark, the City of Alexandria, and Stephen Mutschall have separately filed Motions to Dismiss.  Plaintiff has been afforded the opportunity to respond to these motions but has not done so.  On August 23, 2021, however, Plaintiff filed a motion appealing Magistrate Judge Buchanan's order denying his motion for reconsideration for appointment of counsel.

## II. STANDARD OF REVIEW

### A. Rule (12)(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action.  Fed. R. Civ. P. 12(b)(1).  A district court must dismiss an action over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), (h)(3).  In considering a 12(b)(1) motion to dismiss, plaintiff carries the burden of proving that federal subject matter jurisdiction is proper.  *See United States v. Hays*, 515 U.S. 737, 743

4

(1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id*. Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the trial court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district court is then free to weigh the evidence to determine whether there is jurisdiction. *Adams*, 697 F.2d at 1219. Under this approach, "[n]o presumptive truthfulness attaches to the plaintiff's allegations." *Mortensen*, 549 F.2d at 891. "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac, R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### B. Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011). "[T]he reviewing court must determine whether the complaint alleges sufficient facts 'to raise a right to relief above the speculative level[,]'" and dismissal is appropriate only if the well-pleaded facts in the complaint "state a claim that is plausible on its face." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting

5

*Twombly*, 550 U.S. at 555, 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Still, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."). And "[g]enerally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion." *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citing *Goldfarb*, 791 F.3d at 508)).

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014)). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17–cv–01365, 2018 WL 2025299, at *8 (E.D. Va.), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III. ANALYSIS

Before turning to the merits of Plaintiff's case, the Court first addresses his appeal of Magistrate Judge Buchanan's August 13, 2021 Order. *See* Dkt. 36. In that Order (Dkt. 35), Judge Buchanan denied Plaintiff's Motion for Reconsideration of the Court's July 20, 2021 Order (Dkt. 25) denying Plaintiff's Motion to Appoint Counsel. *See* Dkt. 29. Defendant Stephen Mutschall opposed the motion (Dkt. 30), and Plaintiff did not file a reply or notice his motion for oral argument. In denying Plaintiff's initial Motion to Appoint Counsel, Judge Buchanan noted that

although the Court generally does not appoint counsel for parties in civil cases, such appointments may be warranted in exceptional circumstances, "such as for cases that involve particularly complex factual or legal issues." Dkt. 25 at 1 (quoting *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) and *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 722 (E.D. Va. 2008)). Finding that Plaintiff's case was "not particularly complex, either factually or legally," Judge Buchanan denied Plaintiff's motion for counsel. Dkt. 25 at 1-2. The Order also denied Plaintiff's request for a month to respond to each pending motion to dismiss, though recognizing that despite "the difficulty of proceeding *pro se*, Plaintiff chose to file an action in this Court and is bound by its local rules"—including the briefing schedule "governed by Local Civil Rule 7(F)." *Id.* at 2.

When Plaintiff sought reconsideration of that decision, Judge Buchanan found that he had "not alleged changes in controlling law, new evidence not available at the time of his motion, or any clear error of law or manifest injustice"—which he must show to prevail on a motion to reconsider. Dkt. 35 at 3. "Rather, Plaintiff repeat[ed] the arguments in his original motion and attach[ed] a number of exhibits available at the time he filed the initial motion." *Id.*

Appealing Judge Buchanan's order denying his motion for reconsideration, Plaintiff asserts that the Magistrate Judge acted outside her authority and that he never consented to her jurisdiction. This argument fails on both grounds. First, Judge Buchanan acted well within her authority under the Federal Magistrates Act to issue an order resolving Plaintiff's requests for appointment of counsel and for an exception from Local Civil Rule 7(F). *See* 28 U.S.C. 636(c). Second, Plaintiff's consent to magistrate resolution of these non-dispositive motions was not required. *See* Fed. R. Civ. P. 73 (providing that a magistrate judge may, if all parties consent, *conduct* a civil action or proceeding, including a jury or nonjury trial) (emphasis added). Having performed a *de novo*

review of Judge Buchanan's Order denying Plaintiff's Motion for Reconsideration, this Court finds no clear error that would justify setting aside that well-reasoned decision.

As for the counts alleged in Plaintiff's Amended Complaint, this Court lacks subject matter jurisdiction over claims asserted against Defendant Judge James Clark because he is entitled to judicial immunity. In addition to this jurisdictional defect, Plaintiff fails to state a claim upon which relief can be granted in this Court as to any other Defendant.

### A. Claims against Defendant Judge James Clark

#### 1. *Rooker-Feldman* Doctrine

Defendant Clark asks the Court to apply the *Rooker-Feldman* doctrine, which prohibits lower federal courts from reviewing state court decisions. *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 483 n.16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). This doctrine bars the party that lost in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[D]istrict courts lack power to 'reverse or modify' a state court decree, to 'scrutinize or invalidate' an individual state court judgment, or to 'overturn an injurious state court judgment.'" *Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 551-52 (E.D. Va. 2007) (quoting *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006)), *aff'd*, 254 F. App'x 167 (4th Cir. 2007). The doctrine only applies in cases where (1) the federal court plaintiff lost in state court; (2) the federal court plaintiff complains of "injuries" arising from that state court judgment; (3) the state court judgment became final before the federal lawsuit began; and (4) the federal complaint invites

"district court review and rejection of [the state court judgment.]" *Adkins*, 464 F.3d at 463 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

Plaintiff's claims against Judge Clark meet three of the four requirements. Indeed, Plaintiff received a disadvantageous resolution in state court when Judge Clark heard Plaintiff's petition, implemented the probate of Mrs. Dwyer's estate, denied Plaintiff's recusal request, and denied his Motion to Disqualify Mutschall as Administrator. Plaintiff now asserts injuries resulting from this unfavorable resolution in the General District Court for the City of Alexandria, which he asks this Court to review and reject.

As for the finality factor, the state court judgment became final on February 11, 2021. *See* Dkt. 21-11. Although the operative complaint—the Amended Complaint (Dkt. 4)—was filed March 29, 2021, this federal lawsuit began when he first brought a Complaint in this Court on January 12, 2021. *See* Dkt. 1. This Court has observed that "*Exxon Mobil* does not answer whether *Rooker–Feldman* operates to bar a federal action if the state decision becomes final until shortly after the federal action is filed." *Field Auto City*, 476 F. Supp. 2d at 552. The finality question can be complicated by the presence of an appeal, with some courts holding that, for *Rooker-Feldman* purposes, the relevant final judgment is that of the state trial court. By contrast, other courts have held that the underlying state court judgment is not final until an appellate court has ruled on an appeal. *Field Auto City* documented this split in authority, and a judge of this Court ultimately adopted the "more persuasive view" that "the state court proceeding that must reach judgment before a federal complaint is filed for *Rooker–Feldman* to be applicable is the appealable trial court's judgment." 476 F. Supp. 2d at 552-53 (collecting cases).

Here, Plaintiff was entitled to appeal the General District Court's February 11, 2021 ruling within ten days provided he posted an $8,000 bond. But he failed to do so, instead filing a pleading

9

directly in Alexandria Circuit Court on March 2, 2021. Dkt. 21-12. Even though this attempt at appeal was dismissed as untimely, neither the state court judgment nor the circuit court's decision were final when Plaintiff filed his federal lawsuit on January 12, 2021. Under these circumstances, the *Rooker-Feldman* doctrine does not bar Plaintiff's claims.

### 2. Judicial Immunity

Plaintiff's claims against Judge Clark must also overcome the well-recognized doctrine known as judicial immunity. Deeply rooted in American jurisprudence, the doctrine holds that "a judge is absolutely immune from a claim for damages arising out of his judicial actions." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). The judicial immunity bar includes damages claims brought under 42 U.S.C. § 1983, *see Pierson v. Ray*, 386 U.S. 547, 554 (1967), as well as § 1983 cases where a plaintiff seeks both damages and injunctive or declaratory relief. *See, e.g.*, *Lepelletier v. Tran*, 633 F. App'x 126, 127 (4th Cir. 2016) (holding that a plaintiff's "claims seeking injunctive relief against a sitting state court judge for actions taken in his judicial capacity also were barred by the plain language of 42 U.S.C. § 1983").

Two exceptions impose limits on the doctrine of judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Wavo*, 502, U.S. 9, 11-12 (1991).

Neither exception applies here. Each of Judge Clark's acts that allegedly injured Plaintiff—his appointment of Mutschall as Dwyer's guardian on an emergency and temporary basis, his subsequent decision to make that appointment permanent, and his rulings in the probate of Dwyer's estate—fell within his judicial capacity. And Virginia law has plainly conferred jurisdiction on Judge Clark to take these actions. *See* Va. Code § 64.2-2001(A) (requiring that

10

guardianship petitions be filed in circuit courts); Va. Code § 64.2-443(A) ("The circuit courts shall have jurisdiction of the probate of wills."). Accordingly, Judge Clark has immunity from each of the claims Plaintiff brings against him in the Amended Complaint, and they must be dismissed for lack of subject matter jurisdiction.

### B. Claims Against Defendants City of Alexandria and Mutschall

#### 1. Conversion

Plaintiff brings a claim for "conversion of [Dwyer's] assets by Mutschall, Westreich and persons unknown." Dkt. 4 at 6.[2] The tort of conversion is "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 259 Va. 806, 814 (2000) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76 (1956)). Importantly, an action for conversion "can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." *Id.* Plaintiff cannot individually bring this claim on behalf of Dwyer or her estate, however, because he has no property interest in the assets Defendants allegedly converted. Only her estate could assert such an interest. Accordingly, his claim of conversion is not actionable.

#### 2. False Arrest

Next, Plaintiff alleges false arrest and kidnapping for the "physical forcible transfer" of his late wife. To state a claim for false imprisonment, Plaintiff must show that *his* liberty was restrained without lawful process. *See Smith v. Ray*, 855 F. Supp. 2d 569, 583 (E.D. Va. 2012), *aff'd*, 781 F.3d 95 (4th Cir. 2015). The Amended Complaint does not allege that Plaintiff's liberty

---

[2] This allegation appears to refer to Jonathan Westreich, an attorney for the City of Alexandria who is not named as a defendant in this action.

11

was ever impinged without lawful process, however, and he cannot assert the tort of lawful imprisonment on his late wife's behalf. He therefore does not state a valid claim for false arrest.

### 3. 42 U.S.C. § 1983

Claiming violations of his federal constitutional rights, Plaintiff also brings a cause of action under 42 U.S.C. § 1983. A municipality may be sued as a "person" under § 1983 so long as "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In addition, a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. A city may not be held liable under *Monell*, however, merely because an alleged wrongdoer is employed by the municipality. *See id.* ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Plaintiff's § 1983 claim does not meet these requirements to plausibly hold the City liable. His allegations in the Amended Complaint fail to identify any policy statement, ordinance, regulation, or official decision of the City as the cause of the alleged civil rights violations that Plaintiff experienced. Neither does his pleading identify any custom of the City that might support § 1983 liability. The Amended Complaint contains only conclusory statements alleging constitutional deprivations without specifying how the acts of any City of Alexandria employee were linked to a specific municipal policy or custom. To be sure, Plaintiff alleges that City employees Sarisky and Williams communicated with Dwyer, visited her home, and "were ordered to leave" after Dwyer called the police. Dkt. 4 at 2. Plaintiff further alleges that Sarisky was then

12

"in contact with" a contract city attorney, Jonathan Weistrich, who then filed a petition seeking to appoint a guardian and conservator for Dwyer. *Id.* These facts are wholly divorced from any unconstitutional policy or custom that might support Plaintiff's § 1983 claim against the City.

While Plaintiff's Amended Complaint "does not need detailed factual allegations" to survive a motion to dismiss, his "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Critically, the Amended Complaint fails to allege facts sufficient to infer any violation of a constitutionally protected right under § 1983; his Fifth Amendment claim is not actionable against non-federal entities, *see Dusenbery v. United States*, 534 U.S. 161 (2002), and his references to Fourth and Fourteenth Amendment violations, without more, do not state a plausible claim for relief.[3] And to the extent Plaintiff alleges a conspiracy claim under 42 U.S.C. § 1985, the mere fact that City employees discussed their assessments of Dwyer's condition with the attorney who later filed a petition for appointment of a guardian and conservator "does not plausibly suggest that they shared a common plan or 'conspiratorial objective' to violate Plaintiff's civil rights." *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416, 435 (4th Cir. 2020).

Plaintiff's Section 1983 claim does not state a claim upon which relief may be granted, and this Court must therefore dismiss it.

---

[3] Plaintiff also cites 18 U.S.C. § 2071, *see* Dkt. 4 at 7, but this federal criminal statute does not create a private right of action.

4. Civil Conspiracy

To state a claim for common law conspiracy, a party must show that two or more persons combined to accomplish, by some sort of concerted action, a criminal or unlawful purpose by a criminal or unlawful means. *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 318 (4th Cir. 2012) (quoting *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39 (1995)). However, a standalone civil conspiracy claim is not actionable under Virginia law; there must be an underlying unlawful act that independently imposes liability upon the primary wrongdoer. Only then can that liability be spread to the remaining co-conspirators. *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., L.L.C.*, 294 Va. 243, 256 (2017); *see also Dunlap v. Cottman Transmission Sys., L.L.C.*, 287 Va. 207, 215 (2014) ("The gist of the civil action of conspiracy is the damage caused by acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means.").

For the reasons the Court has described, Plaintiff fails to state any underlying unlawful act upon which relief may be granted. Therefore, this Court must dismiss his common law conspiracy claim as well.

5. Injunctive Relief

Plaintiff also seeks an injunction. To obtain permanent injunctive relief, a plaintiff must show:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Vollette v. Watson*, 978 F. Supp. 2d 572, 583 (E.D. Va. 2013). Plaintiff's injunctive relief claim fails for at least four reasons. First, although Plaintiff raises a number of grievances with

Defendants' handling of his late wife's affairs and estate, his Amended Complaint identifies no irreparable injury that would entitle him to an injunctive remedy. Second, the Court finds no basis to conclude that monetary damages, if appropriate, would be insufficient to remedy any irreparable injury Plaintiff claims. Third, Plaintiff has not shown that the balance of equities tipped in his favor. Fourth, and finally, he has failed to show that the public interest would be served by enjoining the City of Alexandria, a court-appointed guardian, or any other defendant from carrying out their prescribed duties in a case like this one. In this case, a federal court injunction would only impede the significant public interest in permitting those officers to perform their duties on behalf of the local community.

### 6. Punitive Damages

Plaintiff also seeks punitive damages. In a § 1983 action, punitive damages are appropriate only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Because this Court has found that Plaintiff cannot establish § 1983 liability as to any Defendant in this action, the question of whether punitive damages would be available to him is a secondary issue. Even so, this Court observes that a claim of punitive damages against the City fails because "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As for Defendant Mutschall, Plaintiff's Amended Complaint does not plausibly allege any facts showing the necessary factor of evil motive or intent, or that Mutschall acted with reckless or callous indifference to any federally protected right. Furthermore, Plaintiff's alleged injuries are based solely on harm suffered by Dwyer, not himself, and Plaintiff is therefore unable to recover punitive damages on that basis.

## IV. CONCLUSION

For these reasons, it is hereby ORDERED that Defendants' Motions to Dismiss (Dkt. Nos. 8; 15; 20) are GRANTED. The Amended Complaint (Dkt. 4) is hereby DISMISSED; and it is

FURTHER ORDERED that Plaintiff's Motion Appealing the Magistrate's Order Denying Plaintiff's Motion for Court to Appoint Attorney (Dkt. 36) is DENIED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to send copies of this Order to counsel of record and to Plaintiff, *pro se*, and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 16, 2022

                                          /s/
                                    Rossie D. Alston, Jr.
                                    United States District Judge